**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

MARTIN LUTHER BASKERVILLE,

                         Plaintiff,

       - v -                       Civ. No. 9:04-CV-00506
                                           (TJM/RFT)
SUSAN H. ODESSKY, LISA FLEISCHMANN,
NURSE LINDA POLINSKY, DR. MITCHELL LANGBART,
DR. MICHAEL S. ARONOFF,

                         Defendants.

**THOMAS J. McAVOY,**
**Senior United States District Judge**

## DECISION and ORDER

### I.   INTRODUCTION

*Pro se* Plaintiff Martin L. Baskerville brings a cause of action pursuant to 42 U.S.C. § 1983 alleging violations of his privacy rights, psychotherapist-patient privilege, physician-patient privilege, Health Insurance Portability and Accountability Act of 1996 ("HIPPA"), and Office of Mental Health ("OMH") policies resulting in deprivations under the Fifth, Eighth and Fourteenth Amendments to the United States Constituion. See generally, Dkt. No. 7, Am. Compl. Defendants in this action are: (1) Assistant Attorney General for the State of New York ("AAG") Susan H. Odessky, Esq.; (2) AAG Lisa Fleischmann, Esq. (3) Psychiatric Nurse for the State of New York Office of Mental Health Central New York Psychiatric Center at the Auburn Correctional Facility ("OMHCNYPC") Linda Polinsky; (4) Psychiatrist for the

OMHCNYPC, Dr. Mitchell Langbart; and (5) Dr. Michael S. Aronoff , a private psychiatrist retained by the State of New York to provide expert testimony in a civil case, as more fully discussed below. The Court will refer to Defendants Odessky, Fleischmann, Polinsky, and Lambert as the "State Defendants."

   The State Defendants and Dr. Aronoff each move to dismiss the action, or in alternative, for summary judgment.  Plaintiff has opposed these motions.  For the reasons that follow, the motions are granted.

## II.  FACTS

   The facts of this case are not overly complex.  Plaintiff, an inmate incarcerated in the State of New York, had previously commenced a civil action seeking to recover monetary damages for injuries he purportedly suffered at the hands of New York State Department of Correctional Services ("DOCS") employees. See *Baskerville v. Goord*, No. 97 Civ. 6413 (S.D.N.Y. Nov. 19, 2003)("*Goord*"). Plaintiff claimed that the actions of the defendants in *Goord* caused him to suffer physical injuries, emotional distress, and Post Traumatic Stress Disorder ("PTSD"). Dkt. No. 31, State Defs.' Mot., Susan H. Odessky Aff., Attach. # 4, Ex. B, Pl.'s Second Am. Compl. at ¶¶ 8, 21 & 22.  To defend against the claim of psychological damages, the defendants in *Goord* sought his medical and psychiatric records, and retained Dr. Aronoff to conduct an independent psychiatric evaluation of Plaintiff.  Dkt.

No. 31, State Defs.' Mot., Attach. # 1, Stat. of Material Facts at
¶ 7; Dkt. No. 32, Aronoff's Cross Mot., Attach. # 1, Stat. of
Material Facts at ¶ 8.  Pursuant to a court order, Plaintiff issued
a release to provide his medical records to the defendants'
counsel.  The release was a standard authorization form supplied by
OMH.  State Defs.' Mot., Attach. # 1, Stat. of Material Facts at
¶¶ 8 & 9; Dkt. No. 40, Pl.'s Stat. of Material Facts at ¶¶ 4, 7, &
8.  It stated in one part that the disclosure was to be "use[d] in
the litigation of the case of *Baskerville v. Goord*, 97 Civ. 6143.
Plaintiff's counsel also marked a box on the form that indicated
that the release was to expire "when acted upon."  State Defs.'
Mot., Attach. # 1, Stat. of Material Facts at ¶¶ 9 & 10; Pl.'s
Stat. of Material Facts at ¶ 8.

Plaintiff contends that the language in the form was
"unambiguous" and meant that any time records were sought after the
initial disclosure of records, the *Goord* defendants would need
another release. Pl.'s Stat. of Material Facts at ¶¶ 8 & 9.
Defendants' counsel, on the other hand, assumed that since the
purpose of the disclosure was for "use in the litigation," that the
release was valid "up to and including the date of the trial."
State Defs.' Mot., Attach. # 1, Stat. of Material Facts at ¶ 12.

After the *Goord* defendants received Plaintiff's medical
records, Dr. Aronoff was dispatched to conduct his examination of
Plaintiff.  On July 18, 2003, Dr. Aronoff went to the Auburn

Correctional Facility to interview Plaintiff.  Before speaking to
Plaintiff, Dr. Aronoff  spoke to Nurse Polinsky and Dr. Langbart
(Plaintiff's treating psychiatrist) about Plaintiff's treatment.
State Defs.' Mot., Attach. # 1, Stat. of Material Facts at ¶¶ 14,
20, & 21; Pl.'s Stat. of Material Facts at ¶ 10;  Aronoff's Cross
Mot., Attach. # 1, Stat. of Material Facts at ¶¶ 10 & 12.  When
Nurse Polinsky and Dr. Langbart were communicating with Dr. Aronoff
and providing medical records, they assumed that the release was
valid for a period of time and that any communications were allowed
as part of the process of the lawsuit and pursuant to the release.
State Defs.' Mot., Langbart Aff., Attach. # 13 at ¶ 10; State
Defs.' Mot., Polinsky Aff., Attach. # 18 at ¶¶ 5 & 7.  They did not
believe they were violating Plaintiff's rights.  State Defs.' Mot.,
Langbart Aff., Attach. # 13 at ¶ 10; State Defs.' Mot., Polinsky
Aff., Attach. # 18 at ¶ 5.

    Dr. Aronoff then proceeded to examine Plaintiff and, before
beginning,  explained to Baskerville there was no physician-patient
privilege and that "anything they discussed would be available to
the public and placed in a report."  Aronoff's Cross Mot., Attach.
# 1, Stat. of Material Facts at ¶¶ 15 & 16; Pl.'s Stat. of Material
Facts at ¶¶ 13 & 14.  Even though Plaintiff claims he objected to
Dr. Aronoff's communication with Nurse Polinsky and Dr. Langbart,
Plaintiff went ahead with the interview, thus disclosing his
medical information.  Pl.'s Stat. of Material Facts at ¶¶ 15 & 16;

State Defs.' Mot., Attach. # 1, Stat. of Material Facts at ¶ 22; Aronoff's Cross Mot., Attach. # 1, Stat. of Material Facts at ¶ 16. After the interview, further records were disclosed to Dr. Aronoff via the Attorney General's Office, including Plaintiff's charts, psychiatric and medical records, and his "rap sheet." Pl.'s Stat. of Material Facts at ¶ 17; State Defs.' Mot., Attach. # 1, Stat. of Material Facts at ¶¶ 24, 25, 26, & 27; Am. Compl. at ¶ 22. Dr. Aronoff concluded that Plaintiff did not suffer from PTSD, and apparently issued a report in this regard. Aronoff's Cross Mot., Attach. # 1, Stat. of Material Facts at ¶ 17.

Sometime thereafter, Dr. Aronoff was deposed and Plaintiff learned that Dr. Aronoff had received information about Plaintiff beyond that which was initially disclosed. See Aronoff's Cross Mot., Attach. # 1, Stat. of Material Facts at ¶ 18; State Defs.' Mot., Attach. # 1, Stat. of Material Facts at ¶ 33. Plaintiff's counsel was of the opinion that the additional records obtained after the initial disclosure were without proper authorization, see State Defs.' Mot., Attach. # 1, Stat. of Material Facts at ¶ 29, and sought a ruling from the Hon. Kevin Nathaniel Fox, United States Magistrate Judge for the Southern District of New York .[1] State Defs.' Mot., Attach. # 1, Stat. of Material Facts at ¶ 31.

On August 8, 2003, Magistrate Judge Fox issued an Order directing all parties to compare and exchange all medical and

---

[1] Magistrate Judge Fox was apparently overseeing discovery in *Goord*.

psychological records that they had, and to exchange with each other all such records so that all parties would be equally prepared for trial.  Dkt. No. 41, Baskerville Aff., Attach. # 4, Ex. 23, Order, dated Aug. 12, 2003 at p. 3, ¶ 10.[2]  The court then ordered that there would be no more medical or psychological records provided to either party.

On or about November 1, 2003, "three days before trial was scheduled to start in *Goord* ... plaintiff's counsel informed the defendants' counsel that they were withdrawing any claims that plaintiff had asserted for psychological injuries[.]"  State Defs.' Mot., Attach. # 1, Stat. of Material Facts at ¶ 39.  Therefore, neither Dr. Aronoff nor any other witnesses testified at trial as to Baskerville's purported psychological injuries.  *Id.*  On November 14, 2003, a jury found for the Defendants in *Goord*.  *Id.* at ¶ 40.

## II.  DISCUSSION
### A.   Summary Judgment Standard

Both motions seek summary judgment "in the alternative."   In support of their motions, the movants submit matters beyond the pleadings.  Plaintiff, a *pro se* litigant, received proper notice that the motion was being brought under Rule 56, and responded in a manner that clearly demonstrated that he understood the

---

[2] There is an indication in the record that, although Plaintiff and his counsel objected to the defendants receiving Plaintiff's updated or then-current psychological records, Plaintiff had signed a release to allow his counsel to receive these records to prepare for trial.

ramifications of such a motion.  Therefore, and because the Court will consider the matters outside the pleadings, the Court will treat the motion as one seeking summary judgment.  See FED. R. CIV. P. 12(c)(If "matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56 . . . ." ).

Pursuant to FED. R. CIV. P. 56(c), summary judgment is appropriate only where "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law."  The moving party bears the burden to demonstrate through "pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any," that there is no genuine issue of material fact.  *F.D.I.C. v. Giammettei*, 34 F.3d 51, 54 (2d Cir. 1994) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).  "When a party has moved for summary judgment on the basis of asserted facts supported as required by [Federal Rule of Civil Procedure 56(e)] and has, in accordance with local court rules, served a concise statement of the material facts as to which it contends there exist no genuine issues to be tried, those facts will be deemed admitted unless properly controverted by the nonmoving party."  *Glazer v. Formica Corp.*, 964 F.2d 149, 154 (2d Cir. 1992).

To defeat a motion for summary judgment, the nonmoving party must "set forth specific facts showing that there is a genuine

issue for trial," and cannot rest on "mere allegations or denials" of the facts submitted by the moving party.  FED. R. CIV. P. 56(e); *see also Scott v. Coughlin*, 344 F.3d 282, 287 (2d Cir. 2003) ("Conclusory allegations or denials are ordinarily not sufficient to defeat a motion for summary judgment when the moving party has set out a documentary case."); *Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522, 525-26 (2d Cir. 1994).  To that end, sworn statements must be "more than mere conclusory allegations. . . they are specific and detailed allegations of fact, made under penalty of perjury, and should be treated as evidence in deciding a summary judgment motion" and the credibility of such statements is better left to a trier of fact.  *Scott v. Coughlin*, 344 F.3d at 289.

When considering a motion for summary judgment, the court must resolve all ambiguities and draw all reasonable inferences in favor of the nonmoving party.  *Nora Beverages, Inc. v. Perrier Group of Am., Inc.*, 164 F.3d 736, 742 (2d Cir. 1998).  "[T]he trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them.  Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution."  *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994).  Moreover, mere conclusory allegations, unsupported by the record, are insufficient to defeat a motion for summary judgment.  *See Carey v.*

-8-

*Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991).

## B.  Section 1983 Actions

A review of the Amended Compliant reveals that Plaintiff asserts that all defendants' actions violated his constitutional rights.  Of course, 42 U.S.C. § 1983 ("Section 1983")  is the operative vehicle to bring a claim alleging a deprivation of a constitutional right.  In order to state a valid claim under Section 1983,  "a plaintiff must show (a) that the defendant is a person acting under the color of state law, and (b) that the defendant caused the plaintiff to be deprived of a federal right." *Back v. Hastings on Hudson Union Free Sch. Dist.*, 365 F.3d 107, 122 (2d Cir. 2004) (citation omitted) (internal quotation marks omitted).

The initial question in this case is whether Dr. Martin, a private psychiatrist, acted under color of state law.  The Supreme Court has held that "a person acts under color of state law only when exercising power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'"  *Polk County v. Dodson*, 454 U.S. 312, 317-18 (1981) (quoting *United States v. Classic*, 313 U.S. 299, 326 (1941)).   A private party may be subject to liability as a state actor pursuant to § 1983 under various theories.  First, under the symbiotic relationship test a private party is said to have acted under color of state law when "[t]he State has so far insinuated itself into a

position of interdependence with [the private party] that it must be recognized as a joint participant in the challenged activity," *Hadges v. Yonkers Racing Corp.*, 918 F.2d 1079, 1081 (2d Cir. 1990)(quoting *Burton v. Wilmington Parking Auth.*, 365 U.S. 715, 725 (1961)).  This test "focuses on the state's overall relationship with the private actor," *Hadges*, 918 F.2d at 1082, for example the existence of a direct financial or proprietary interest by the state in the privately owned business. *See Standardbred Owners Ass'n v. Roosevelt Raceway Assocs.*, 985 F.2d 102, 105 (2d Cir. 1993).  However, the symbiotic relationship test is not satisfied in the situation where the connection is simply that the site of the alleged conduct is owned by the private party. *See Moose Lodge No. 107 v. Irvis*, 407 U.S. 163, 175 (1972).

Second, under the close-nexus test, state action is attributed to the private party when "'there is a sufficiently close nexus between the State and the challenged action' that the private party's action 'may be fairly treated as that of the State itself.'" *Hadges,* 918 F.2d at 1081 (quoting *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 351 (1974)).  This test specifically examines the State's connection to the alleged wrongful private conduct. *See Hadges*, 918 F.2d at 1082.  However, the mere presence of a state regulation does not transform private conduct into state action. *See id.* at 1083.

Next, the public function theory finds that state action

exists when a private entity performs a function and "the function performed has been 'traditionally the *exclusive* prerogative of the State.'" *Rendell-Baker v. Kohn*, 457 U.S. 830, 842 (1982)(emphasis supplied)(quoting *Jackson*, 419 U.S. at 353); *see also Young v. Halle Housing Associates, L.P.*, 152 F. Supp. 2d 355, 362 (S.D.N.Y. 2001).

Finally, under the joint participation theory, a private party may be considered a state actor if the alleged conduct resulted from a willful collaboration with an official state agent in the deprivation of the federal right, *see Ciambriello v. County of Nassau*, 2002 WL 1174667, *11 (2d Cir. June 4, 2002)(quoting *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 150 (1970)), or was the result of a state agent's "encouragement or command." *Dahlberg v. Becker*, 748 F.2d 85, 92 (2d Cir. 1984). Under such a theory the plaintiff must sufficiently allege facts to "lead to a conclusion that there is a conspiracy or meeting of the minds between the private parties and state officials to engage in conduct to deprive a plaintiff of constitutional rights." *Id*. at 93; *see also Ciambriello*, 2002 WL 1174667, *11 (stating that "the complaint must allege facts demonstrating that the private entity acted in concert with the state actor to commit an unconstitutional act")(quoting *Spear v. Town of West Hartford*, 954 F.2d 63, 68 (2d Cir. 1992)).

Formulaic application of these tests is very difficult. *See Hadges*, 918 F.2d at 1081. Courts are required "to sift through and

weigh the facts to determine whether the alleged ties between the State and the private actor are sufficiently strong to attribute the private actor's conduct to the state." *Id.(citing Burton v. Wilmington Parking Auth.*, 365 U.S. 715, 722 (1961)).

First, there is no basis to find state action under the symbiotic relationship test. There is no dispute that Dr. Aronoff was retained by the State of New York as a psychiatric expert in regards to the psychological injuries claimed by Baskerville in the *Goord* action. Dkt. No. 31, State Defs.' Mot., Odessky Aff., Attach. # 2 at ¶ 14. His services for the state were limited to the pending lawsuit.

Second, the relationship was not so close to pass muster under close nexus test. Dr. Aronoff was simply hired to be an independent psychological expert and offer an expert opinion. His opinion could have been contrary to the State's interest, and the fact that he opined in a manner favorable to the state does not create a close nexus.

Third, there is no basis to find that Dr. Aronoff served a public function traditionally the exclusive prerogative of the State. Expert witnesses are retained, and testify, in all types civil actions - not just ones against the State.

Fourth, no basis exists to find state action under the joint participation theory. There is no evidence that Dr. Aronoff's conduct resulted from a willful collaboration with an

official state agent in the deprivation of the federal right, or was the result of a state agent's encouragement or command. Rather, the evidence reveals that Dr. Aronoff was retained to offer his expert opinion and, in furtherance of that obligation, sought to review records and information that was important, material, and relevant to forming the most accurate opinion he could under the circumstance.  No reasonable fact finder could conclude that Dr. Aronoff was in willful  collaboration with an official state agent in the effort to deprive a federal right, or acted as result of a state agent's encouragement or command.

Hence, at least with regard to Dr. Aronoff, there was no state action and, therefore,  the Section 1983 claims against fail as a matter. All such claims against him are dismissed.

## C.  Qualified Immunity

The Court next turns to the claims against the State defendants.  Assuming, without deciding, that the State Defendant's actions violated Plaintiff's federally protected rights,[3] the

---

[3] This proposition of law is tenuous at best. See  *Woods v. Goord*, 2002 WL 731691, at *11 (S.D.N.Y. Apr. 23, 2002) (When an inmate files suit against prison officials, subsequent release of "medical records in defense of litigation does not violate any right of the inmate[.]")(citations omitted); *Gill v. Gilder*, 1997 WL 419983, at *3 (S.D.N.Y. July 28, 1997)(The waiver of one's right to privacy in medical records occurs when a plaintiff places "his medical condition at issue in a lawsuit." ) (citing *Crawford v. Manion*, 1997 WL 148066, at *1 (S.D.N.Y. Mar. 31, 1997); *Doe v. Marsh*, 918 F. Supp. 580, 585 (N.D.N.Y. 1996) (further citations omitted)); *see also Manessis v. New York City Dep't of Transp.*, 2002 WL 31115032, at *2 (S.D.N.Y. Sept. 24, 2002)(When a plaintiff claims emotional distress damages, the plaintiff "may not maintain a claim of privacy in any mental health records[.]"); see also *Johnson ex rel. v. Columbia Univ.*, 2003 WL 22743675, at *11 (S.D.N.Y. Nov. 19, 2003) (citing *Paul v. Davis*, 424 U.S. 693, 713 (1976) (noting that no constitutional right of confidentiality existed when a person's shoplifting arrest was published); *J.C. McCrary v. Jetter*, 665 F. Supp. 182, 185 (E.D.N.Y. 1987) (stating there was no constitutionally protected right of confidentiality for a youthful offender file); *Fraternal Order of Police Lodge No. 5v. City of Philadelphia*, 812 F.2d 105, 117 (3d Cir. 1987) (commenting on the public nature of arrest records, which were not entitled to privacy protection); *Cline v. Rogers*, 87 F.3d 176, 179 (6th Cir. 1996) (holding that "[n]ondisclosure of one's criminal record is not one of those

action against the State Defendants must be dismissed under the doctrine of qualified immunity.

The defense of qualified immunity "serves important interests in our political system," *Sound Aircraft Servs., Inc. v. Town of East Hampton,* 192 F.3d 329, 334 (2d Cir. 1999), ensuring that damages suits do not "unduly inhibit officials in the discharge of their duties" by burdening individual officers with "personal monetary liability and harassing litigation." *Anderson v. Creighton,* 483 U.S. 635, 638, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987); *see Connell v. Signoracci,* 153 F.3d 74, 79 (2d Cir.1998). For this reason, the Supreme Court has directed that "[w]here the defendant seeks qualified immunity, a ruling on that issue should be made early in the proceedings so that the costs and expenses of trial are avoided where the defense is dispositive." *Saucier v. Katz,* 533 U.S. 194, 121 S.Ct. 2151, 2155-56, 150 L.Ed.2d 272 (2001).

"[W]hether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the objective legal reasonableness of the action ... assessed in light of the legal rules that were clearly established at the time it was taken." *Anderson v. Creighton,* 483

---

personal rights that is 'fundamental' or 'implicit in the concept of ordered liberty.'" (citing *Whalen v. Roe*, 429 U.S. 589 (1977)); *see also Walker v. Alternatives to Incarceration of Montgomery County, Inc.*, 1996 WL 465310, at *26 (N.D.N.Y. Aug. 13, 1996) (holding that no privacy interest exists in regards to "criminal history records or rap sheet[s]" (internal quotation marks and citations omitted).

U.S. 635, 639, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)(internal

quotation marks and citation omitted).

> Even where the plaintiff's federal rights and the scope
> of the official's permissible conduct are clearly
> established, the qualified immunity defense protects a
> government actor if it was 'objectively reasonable' for
> him to believe that his actions were lawful at the time
> of the challenged act.

*Anthony v. City of New York,* 339 F.3d 129 (2d Cir.2003)(internal

quotation marks and citations omitted).  "As the qualified immunity

defense has evolved, it provides ample protection to all but the

plainly incompetent or those who knowingly violate the law." *Malley*

*v. Briggs,* 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271

(1986).

Here, the release in question was, at the very least,

ambiguous as to its duration.  The prominent phrase that it was for

"use in the litigation of the case of *Baskerville v. Goord*, 97 Civ.

6143" would lead any reasonable government attorney, doctor, or

nurse to conclude that release of information to the State's

expert, for purposes of his independent evaluation while the case

was still pending, was authorized by the release.  Therefore,

Defendants Odessky, Fleischmann, Polinsky, and Lambert are entitled

to qualified immunity on all of Plaintiff's Section 1983 claims

related to his deprivations arising from the release of his medical

and/or psychiatric records and information. The fact that Dr.

Langbart referred Dr. Aronoff to Plaintiff's "'rap sheet' which

contained [P]laintiff's criminal convictions," Am. Compl. at ¶ 22,

*-15-*

and that Dr. Aronoff referred to the rap sheet in drawing his opinion about Plaintiff's asserted PTSD leads invariably to the conclusion that the disclosure of this information was relevant and necessary to the medical diagnosis that Dr. Aronoff was being called upon to draw.  Thus, it was objectively reasonable for Dr. Langbart to provide Dr. Aronoff a copy of Plaintiff's rap sheet, and Dr. Langbart is entitled to qualified immunity for any violations of federally protected law that may have arisen from his conduct.

### III.  CONCLUSION

For the reasons stated therein, it is hereby

**ORDERED**, that State Defendant's Motion for Summary Judgment (Dkt. No. 31) is **GRANTED**; and it is further

**ORDERED**, that Aronoff's Cross-Motion for Summary Judgment against Plaintiff (Dkt. No. 32) is **GRANTED.**


Date:   September 30, 2005


Thomas J. McAvoy
Senior, U.S. District Judge


*-16-*